## KIRBY LUMBER CO. et al. v. CUNNINGHAM.

(Court of Civil Appeals of Texas. Galveston. Feb. 12, 1913.)

1. RECEIVERS (§ 146*)—TERMINATION OF RECEIVERSHIP—LIABILITY OF OWNER.

Under Rev. St. 1895, art. 1472 et seq., relating to the application of funds in the hands of a receiver and the liability of property after redelivery, etc., the owner will not be responsible for liabilities for personal injuries incurred by the receiver, upon the redelivery of the property without sale, unless the property is equal in value to the claim, or the amount of such liabilities have been imposed on the owner by the decree for return as a condition thereof.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 253–256; Dec. Dig. § 146.*]

2. COURTS (§ 363*)—FEDERAL COURTS—APPLICATION OF STATE STATUTE.

Rev. St. 1895, art. 1472 et seq., relating to the application of funds in the hands of a receiver, etc., does not apply to a receivership in a federal court in so far as it provides rules of procedure, or limits the effect of judgments of such courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 939–949; Dec. Dig. § 363.*]

3. RECEIVERS (§ 146*)—RETURN OF PROPERTY—LIABILITY OF OWNER—FEDERAL RECEIVERSHIP.

To make a corporation liable for injuries to an employé while the property was in the hands of a receiver appointed by a federal court, it must be shown that the receivership has been terminated and the property returned to the corporation with such liability imposed upon it by the decree as a condition to receiving it, or that it has assumed such liability, or that the revenues were expended by the receiver in betterments.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 253–256; Dec. Dig. § 146.*]

4. APPEAL AND ERROR (§ 187*)—OBJECTION BELOW — NECESSITY—MISJOINDER OF PARTIES.

Where misjoinder of defendants is not pleaded, it cannot be urged on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1184–1189; Dec. Dig. § 187.*]

5. PLEADING (§ 290*)—APPOINTMENT — PROCEEDINGS AGAINST OWNER — VERIFIED PLEADINGS.

Rev. St. 1895, art. 1265, requiring the answer setting up certain matters to be verified, does not apply to an action against an owner of property for injuries received while it was in the hands of a receiver, so as to require the discharge of a receiver to be denied under oath or stand admitted, the statute not mentioning such a case.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 859–863, 886½; Dec. Dig. § 290.*]

6. RECEIVERS (§ 168*)—ACTIONS AGAINST—DISCHARGE.

A suit cannot be maintained against receivers in their representative capacity after

they have been discharged, and the property re-delivered according to order of the court.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 321, 322; Dec. Dig. § 168.*]

7. RECEIVERS (§ 183*)—GENERAL DENIAL—EFFECT.

A general denial pleaded in an action for personal injuries while defendant lumber company was in the hands of a receiver would put in issue the appointment of a receiver.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 361–366; Dec. Dig. § 183.*]

8. TRIAL (§ 143*)—JURY QUESTION.

A question of fact was for the jury, where the evidence thereon was conflicting.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 342, 343; Dec. Dig. § 143.*]

9. MASTER AND SERVANT (§ 276*)—INJURIES—SUFFICIENCY OF EVIDENCE — PROXIMATE CAUSE.

Evidence in an employé's action for injuries by the derailment of the logging train on which plaintiff was riding *held* to sustain a finding that a defective condition of the car which resulted in a lowering of the sand board, and permitted it to strike a stake driven in the track, was a proximate cause of the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950, 952, 954, 959, 970, 976; Dec. Dig. § 276.*]

10. MASTER AND SERVANT (§ 276*)—INJURIES—PROXIMATE CAUSE—SUFFICIENCY OF EVIDENCE.

Evidence in an action for injuries to an employé by the derailment of a logging train by striking a wooden stake in the track *held* to show that the failure to keep a proper lookout or to have a headlight' on the engine or a light on the end of the car was not a proximate cause of the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. § 276.*]

11. TRIAL (§ 252*)—INSTRUCTIONS—ISSUES.

Instructions in a servant's action for personal injuries should not have submitted grounds of negligence which could not, under the evidence, have proximately caused the injuries.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

12. APPEAL AND ERROR (§ 1066*)—HARMLESS ERROR—INSTRUCTIONS.

In an action for injuries by the derailment of a logging train by striking a wooden stake in the track, error in submitting as grounds of negligence failure to keep a proper lookout, and in not having a headlight or a light on the end of the car, when the only ground of negligence which the evidence showed could have proximately caused the injury was in permitting a defective condition in the car so as to permit it to strike the stake, cannot be said not to have prejudiced defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066.*]

13. NEGLIGENCE (§ 56*)—INJURIES — "PROXIMATE CAUSE."

A proximate cause of an accident is that which in a natural and continuous sequence, unbroken by any new independent cause, produces the event, and without which the injury would not have happened, and from which it could reasonably, and should, have been anticipated that injury would result as a natural and probable consequence under the circumstances (citing 6 Words & Phrases, pp. 5758, 5760).

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 69, 70; Dec. Dig. §.56.*

For other definitions, see Words and Phrases, vol. 8, p. 7771.]

14. MASTER AND SERVANT (§ 296*)—INJURIES — INSTRUCTIONS — CONTRIBUTORY NEGLIGENCE.

An instruction that an employé's contributory negligence must have caused the injury in order to bar recovery, instead of charging that it must have "caused or contributed" to the injury, was erroneous.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*]

15. MASTER AND SERVANT (§ 296*)—INSTRUCTIONS—APPLICATION TO CASE.

The court should have instructed upon the concrete facts claimed to constitute contributory negligence by an employé, if the evidence raised the issue, and not merely have instructed generally on the question of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*]

16. MASTER AND SERVANT (§ 288*)—INJURIES—JURY QUESTION—ASSUMED RISK.

Evidence in an action for injuries to an employé by the derailment of a logging train by striking a wooden stake, caused by a defect in the car so as to let down a part of it far enough to strike the stake, *held* not to raise the issue of assumed risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1005, 1068–1088; Dec. Dig. § 288.*]

17. APPEAL AND ERROR (§ 843*)—REVIEW—QUESTIONS NOT NECESSARY FOR DECISION.

Where the judgment must be reversed and remanded for new trial on other grounds, the question whether the recovery was excessive will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3331–3341; Dec. Dig. § 843.*]

Appeal from District Court, Hardin County; L. B. Hightower, Judge.

Action by R. E. Cunningham against the Kirby Lumber Company and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

Singleton & Nall, of Kountze, and Andrews, Ball & Streetman, of Houston, for appellants. W. D. Gordon, of Beaumont, and John L. Little, of Kountze, for appellee.

REESE, J. On April 16, 1909, R. E. Cunningham instituted suit against J. S. Rice and Cecil Lyons, as receivers of the Kirby Lumber Company, to recover damages for personal injuries alleged to have been sustained by him while engaged in the discharge of his duties as an employé of the receivers by reason of their negligence in various particulars set out in the petition. It was alleged that the Kirby Lumber Company was at the time of the injury, and at the date of filing of the suit, in the hands of receivers, and the injuries were sustained while plaintiff was in their employment. Prayer was that the receivers and the Lumber Company "through· them" be cited, and for judgment against "the receivers in their capacity as such, and the Kirby Lumber Company for whom the receivers are acting." A first amended petition was filed July 24, 1909, against the receivers by name and also the

Lumber Company, in which it was alleged that at the time of the institution of the suit the business of the Lumber Company was in the management and control of said receivers, under the general direction of the judge of the United States court at Houston, Tex., and that since, to wit, on or about July, 1909, "the receivership was closed, the receivers discharged, and the business and management of said Kirby Lumber Company fully discharged by the honorable United States court, where the same was pending and its management and control surrendered to its president, John H. Kirby, and the said Kirby is now acting as president, and conducting the business of said company, and said company is now a proper and necessary party to this suit." On September 27, 1909, Rice and Lyons answered as receivers as aforesaid. The Kirby Lumber Company also filed answer on September 27th. Plaintiff filed a second, third, and also a fourth amended original petition. Each of these amended petitions contained substantially the same allegations as to the receivers and the receivership. The case went to trial on the fourth amended petition of plaintiff, and the second amended joint answer of Rice and Lyons and the Kirby Lumber Company. A trial with the assistance of a jury resulted in a verdict and judgment for plaintiff for $20,000 against the Kirby Lumber Company, and also against J. S. Rice and Cecil A. Lyons as receivers, and the amount "is fixed and established as a lien and charge against the corporate assets of the Kirby Lumber Company under their control and charge as receivers." Rice and Lyons were individually discharged, and no personal judgment rendered against them. From this judgment, their motion for a new trial being overruled, defendants all appeal.

The gist of the action is that while in the employment of said receivers, and while he was being carried from his place of work in the woods to his home upon a flat car being pushed by an engine backwards, the car was derailed, and in consequence thereof plaintiff was injured. The accident was alleged to have been caused by the negligence of said receivers in providing for the transportation of plaintiff a car which was alleged to have been defective in various particulars, in failing to have a person keep a lookout, in failing to have a light on the car, in placing, or allowing to remain, on the track the obstruction which caused the injury, and failing to discover and remove the same. The undisputed evidence indicates that the car was derailed in consequence of striking a stick of wood about two and a half feet long found, after the accident, stuck up in between the ties, and so driven in the ground that, when found, it projected above the ground about six inches, and above the rail about two or three inches. The plaintiff and several others had been working as a loading gang at the end of a spur running out from the main line of defendant's railroad. The engine went out on this spur and brought these men to the main line, and then backed down to another spur running into the woods for the purpose of getting several other men and the tool car in question. At this point on the main line plaintiff and the others with him got off and waited until the engine backed up to the end of the spur where it hooked onto the tool car and brought it with the steel gang back to the main line. There plaintiff and the others, except two, who had in the meantime walked up to where the caboose was, got on the tool car, and the engine, tender, and tool car backing, started up the track to the corral to get the caboose, about 400 yards away. The time was about 6:30 o'clock p. m., November 16th, and it was just about dark, or nearly so. The engine and car had not proceeded more than 30 or 40 yards, and was going about 6 miles an hour, when it suddenly struck an obstruction, and was thrown violently off of and across the track. The men were all thrown off, and several of them, among the others plaintiff, were seriously injured. After the accident, the piece of wood referred to was found imbedded in the ground, slanting in the direction of the car. There were only the engineer and fireman in charge of the train, both in the cab of the engine. There was some evidence that the men had a small fire on a shovel, or something of that kind, on the car, but there was no other light. The car was a small flat car about 12 feet square. The above facts are shown by the undisputed evidence. There was evidence which tended to show that the brasses and wedge over the journal of the axles of the car were worn and broken, causing the car and the sand board to drop down about 1⅞ inches or probably 2 inches, which would have thrown it about 2 inches above the rail, when, but for the defect, it would have been 4 inches, and that the obstruction referred to struck the sand board and derailed the car. The evidence does not satisfactorily account for the presence of the stick of wood driven up in the track, whether it was driven in the ground before, or whether it was lying on the ground, or fell from the car while in motion, and in some totally unaccountable way was turned up and driven in the ground by the impact of the car, is left to conjecture.

One of the grounds urged by appellant, the Kirby Lumber Company, for a new trial was "Because the evidence and judgment are unsupported by the evidence in the case, in that there was no evidence that Cecil A. Lyons and J. S. Rice, as receivers of the Kirby Lumber Company, had been discharged, or that any property of the Kirby Lumber Company in the control of said receivers had ever been redelivered to the Kirby Lumber Company, or that the property in the control of said receivers had been turned back to the Kirby Lumber Company without sale, or that

said receivers or any receivers had made any betterments or improvements upon the property in their charge or in respect thereto, or that there were any earnings of the receivership, or that any earnings of the receivership had been applied or diverted to the betterment and improvement of the property of the Kirby Lumber Company in control of such receivers, or that the Kirby Lumber Company had in any manner been charged with, or assumed liability for, the acts of Cecil A. Lyon and J. S. Rice, as receivers, or that any facts existed by reason of which the Kirby Lumber Company was liable for the acts of receivers of the Circuit Court of the United States in control of its properties."

It was alleged in the petition that appellee was in the employment of J. S. Rice and Cecil A. Lyon as receivers of the Kirby Lumber Company at the time of the accident, and that said receivers were in charge and carrying on the business of said Lumber Company under the order of the United States court at Houston (meaning the Circuit Court of the United States for the Southern District of Texas) at the time of the accident and of the institution of ,the suit, and that since the institution of the suit the receivers had been discharged, and the business and management of the Lumber Company turned over to its president. Appellee testified: "On November 16, 1908 (the date of the accident), I was living at Fuqua, running a steam loader for the Kirby Lumber Company. The Kirby Lumber Company was then in the hands of a receiver." With this reference, the evidence, so far as the record discloses, takes leave of the receivership. Without this evidence the allegations of the petition bound appellee hand and foot to the facts that he received his injuries while in the service of the receivers and through their negligence, or that of their servants and agents. This essential fact is not affected by the testimony of the witnesses, evidently coemployés of appellee, referred to in appellant's brief, that they were working for the Kirby Lumber Company. If appellee had so testified for himself, it would have been a fatal variance between the allegations and the proof.

[1] This imposed no liability upon the Lumber Company. 34 Cyc. 338; Railway Co. v. Adams, 78 Tex. 372, 14 S. W. 666, 22 Am. St. Rep. 56; Railway Co. v. McFadden, 89 Tex. 138, 33 S. W. 853; Ryan v. Hays, 62 Tex. 42. If it be conceded that the act of 1889 (R. S. art. 1472 et seq.) applies to a receivership in a federal court, in order to make the Lumber Company liable in the present case it would be necessary to allege and prove that the receiver had been discharged and the property of the company redelivered to it, and either that such property was equal in value to the amount of plaintiff's claim, or that the payment of such claim had been made a condition of such

redelivery of the property by the decree of the court terminating the receivership. We do not think it was intended by the statute that the reacquisition of its property without sale on the termination of the receivership should render the owner responsible for all liabilities incurred by the receivers, regardless of the value of such property, or the amount of such liabilities. Railway Co. v. Wylie, 33 S. W. 773. Independently of this statute, the rule seems to be established that the owner receiving back his property without sale can only be made responsible for the liabilities incurred by the receiver when it is shown that the revenues of the property while in the hands of the receiver had been expended in betterments. 34 Cyc. 339.

[2] It seems to be settled in this state that the statute referred to has no application to a receivership in a federal court, in so far as the statute provides rules of procedure or limits the effect of judgments of such courts. Fordyce v. Du Bose, 87 Tex. 78, 26 S. W. 1050; Railway Co. v. McFadden, 32 S. W. 22; Bank v. Ewing, 103 Fed. 194, 43 C. C. A. 150; Trust Co. v. Railway Co., 107 Fed. 320, 46 C, C. A. 305. It was held in M., K. & T. Ry. Co. v. Wood, 52 S. W. 94, that the statute has no application to federal receiverships, and as a consequence that "the liability of the railway company for an injury done while the road was being operated by a receiver appointed by a federal court can exist only upon the defendant's assumption of responsibility for the acts of the receiver or upon a liability imposed on them by decree of the federal court upon the termination of the receivership, or upon the theory of betterments during the receivership"—citing Railway Co. v. McFadden, 89 Tex. 145, 33 S. W. 853. To the same effect in substance is the holding of this court in Dillingham v. Kelly, 8 Tex. Civ. App. 113, 27 S. W. 806.

[3] As an original question we would have been inclined to hold that, if there was nothing in the order of the federal court inconsistent with the imposition of liability upon the owner, upon the return of the property to him without sale, even without betterments made, the rule of the statute would apply, but the question seems to have been decided otherwise, at least by this court and that of ·the Fourth district, and we therefore feel constrained to hold that in the present case, in order to make the Lumber Company liable, it should be alleged and proved that the receivership had been terminated and its property returned to it, and either that it had assumed responsibility or that liability had been imposed upon it as a condition of receiving back the property by the decree of the federal court, or that the revenues had been expended by the receiver in betterments to the property. It is not necessary to go so far in deciding this appeal inasmuch as the proof was lacking in

every one of the particulars set out in the motion for a new trial and hereinbefore quoted. We have, however, thought it best to state the rule fully in view of another trial.

[4, 5] There is no question of misjoinder of parties, which was not pleaded as contended by appellee, nor do the provisions of article 1265, R. S., requiring certain pleas to be sworn to, have any application. So far as this assignment of error is concerned, it is simply a case of failure to establish certain facts essential to a recovery against the Kirby Lumber Company. The assignment must be sustained.

The succeeding assignments of error up to and including the ninth present the same questions as to each particular in which there was a failure of evidence, and must all be sustained.

Taking up here the brief of Rice and Lyon as receivers, their first assignment that the verdict and judgment against them are not supported by the pleadings, because they are sued individually and not as receivers, must be overruled. The record does not support the assignment. .

Under their second assignment of error, the receivers complain of the judgment on the ground that, as it had been alleged that the receivership had been closed and the receivers discharged, there was no basis in the pleadings for a judgment against them. As there was no judgment against the receivers individually, but they were expressly discharged from personal liability, the judgment as it affects them being only to establish a lien on any property in their hands belonging to the Lumber Company, it would seem that this part of the judgment is a mere brutum fulmen, unless in fact, after the termination of the receivership, the discharge of the receivers, and the delivery of the "business management and control" of the Lumber Company to its president, there should remain, by some extraordinary anomaly, some of the property of the company in the hands of Rice and Lyon as receivers. This could hardly be as their character as receivers has been effectually terminated by the decree, as alleged in the petition.

[6] It has been held that a suit against receivers in their representative capacity cannot be maintained after they had been discharged, and the property delivered over according to the orders of the court. Receivers v. Du Bose, 87 Tex. 82, 26 S. W. 1050; Brown v. Gay, 76 Tex. 446, 13 S. W. 472; Ryan v. Hays, 62 Tex. 47; Railway Co. v. Dorough, 72 Tex. 111, 10 S. W. 711; Beach on Receivers, § 720; 34 Cyc. 481.

[7] It is further to be said that there was no evidence that Rice and Lyon had ever been appointed receivers. The allegations of the plaintiff's petition did not establish this fact in his favor. This was a fact to be established before the court could predicate any action upon the fact of receivership.

None of the several subdivisions of article 1265, R. S., required that the appointment, when alleged, must be denied under oath. The general denial put this in issue. Railway Co. v. Dorough, supra. The third assignment of error of the receivers further complains of the judgment against them for the entire lack of evidence as to the receivership seems well taken. This includes the lack of evidence that appellee was at the time of his injuries in the employ of J. S. Rice and Cecil A. Lyon as receivers of the Kirby Lumber Company.

The errors here pointed out are not in any proper sense technical errors. Reduced to their last analysis, they present simply a case where certain facts, essential to a recovery by appellee, were not attempted to be proven.

This brings us to the several assignments of error of all the appellants attacking the verdict and judgment for errors in giving and refusing charges, and upon the merits, for insufficiency of the evidence.

There was evidence tending to show, and sufficient for that purpose, if true, that the brasses and wedges over the journal of the axle of the car on which appellee was riding, and upon which in fact the weight of the car rested, were so worn and defective that they had fallen off to one side of the journal in the box, the general effect of which was to lower the car, and with it the sand board attached to the car underneath. This sand board, when these brasses and wedges were in good order, was about four inches above the rail, but in the defective condition of this apparatus, as testified to by some of the witnesses, the sand board was lowered about 1⅞, or possibly 2, inches. It is clear that the result of this defect would be in some supposable case to cause the sand board to strike an obstruction on the track over which it would have passed safely if the sand board had been 2 inches, or 1⅞ inches, higher. We think that the evidence was sufficient to authorize the finding that the receivers operating this road were negligent in allowing this defective condition of this car.

[8] The evidence was conflicting, but the issue was a proper one for the jury to decide. The evidence was also sufficient to show that the derailment was caused by the sand board of the car coming in contact with the stick of wood found sticking up between the rails.

[9] Was the evidence sufficient to authorize the jury to find that the defective condition of the car referred to, resulting in the slight lowering of the sand board, was a proximate cause of the accident? It is true the lowering of the sand board was slight, and it is not clear that the accident would not have happened if the car had not been defective in the manner shown, but we are of the opinion that the evidence was sufficient to raise this issue, and we cannot say

that the verdict of the jury, that the accident was proximately caused by the negligence of the appellants (the receivers) in this particular, was without evidence to support it. However the stick of wood got where it was, and in whatever way it was caused to stick up in the ground so as to strike the sand board, we think that the evidence raised the issue as to whether appellants should not have foreseen, as a probable consequence of the use of the defective car, that the lowered sand board, by reason of that fact, would come in contact with an obstruction on the track. It is clear that even if appellants could have been considered negligent in the other matters charged in the petition, as the failure to have a light on the car, or a watchman to keep a lookout, such failure could not be considered as a proximate cause of the accident. It is difficult to conceive how even with a light on the car, or a watchman, the presence of this small stick of wood could have been discovered in time to prevent the accident. Of course, the failure to have a light on the engine facing in the opposite direction could have had nothing to do with the accident. Even in the absence of any negligence with regard to the stick of wood being on the track, or in the failure to discover it, we think the negligence in using a defective car, more likely on account of such defect to come in contact with objects on the track, would present an issue to be decided by the jury of negligence as a proximate cause of the accident. N. Y. T. & M. Ry. Co. v. Green, 36 S. W. 814. The tenth, eleventh, twelfth, and thirteenth assignments of error are overruled.

Appellants in the fourteenth assignment of error complain of the charge of the court in instructing the jury that appellants would be liable if they were negligent in any of the particulars alleged in the petition, and appellee's injuries were the proximate consequence thereof. Several propositions are stated under the assignment, each proposition being directed to a separate charge of negligence. As is usual in cases of this kind, the defendant was charged with negligence in a great many particulars in which either there was no proof of negligence or such negligence had no connection with the injury.

[10] For instance, in the present case, the appellants were charged with negligence in permitting a stick of wood to fall or remain on the track, in failing to keep a proper lookout to discover the stick of wood on the track, in not having a headlight on the engine, in not having a light on the end of the car, in not having a brakeman or watchman at the end of the car. The evidence did not present the issue of negligence in any way proximately causing the injury in any of these particulars. It seems clear to us that this small stick of wood, triangular in shape, each face or side about three or four inches in dimension, whether sticking up 6 inches above the ground before the car approached or whether it was lying on the ground, or fell off the end of the car in such way that one end, cocked up a few inches, caught on the sand board, in either case would not have been discovered by the use of ordinary care, if there had been a man at the end of the car keeping a reasonable lookout with a light. The absence of a headlight on the engine had no possible connection with the accident.

[11, 12] The charge should have been confined to those particulars of negligence charged in the petition which were supported by the evidence, and as to which there was some evidence to show that they proximately caused the accident. All of the propositions under this assignment, except the third and seventh, point out the particulars in which this charge was objectionable and must be sustained. The third and seventh propositions are overruled. As we have shown, the negligence in the matter of the defective car, and that this was the proximate cause of the accident, were issuable facts. T. & P. Ry. Co. v. Wiesnor, 66 Tex. 675, 2 S. W. 667, and cases cited. We are not able to say that this was mere abstract, and not prejudicial, error in the present case.

[13] The court, in its charge, defined proximate cause as follows: "By 'proximate cause' is meant that which in a natural and continuous sequence, unbroken by any new independent cause, produces the event and without which the event would not have happened." Complaint is made of this part of the charge by the fifteenth assignment of error in connection with the refusal of the following charge requested by appellants, as set out in the sixteenth assignment: "You are charged that by the term 'proximate cause,' as used in the court's charge, is meant a cause without which the injury would not have occurred, and from which it could reasonably have been anticipated that injury would result as a natural and probable consequence." It would take a moderate size volume to contain the discussions upon the question of a correct definition of "proximate cause." 6 Words & Phrases, 5758, tit. "Proximate Cause." The definition given by the court is technically correct, and has been many times approved. See 6 Words & Phrases, p. 5760, where cases are cited. It is, however, true, and has always been part of the law of negligence, that a man will not be held responsible for a result following his negligent act which no man of ordinary care and prudence would reasonably foresee as a result of such act. It has been said that this is an element of the doctrine of negligence, and that one cannot be said to have been negligent in the particular matter in which he is charged with negligence, if a man of ordinary prudence could not have anticipated or foreseen that injurious conse-

quences would result from his act. It cannot be said in such cases that he has not acted as a man of ordinary prudence would have acted in the circumstances. This principle would probably be better expressed by saying that, notwithstanding the event is the direct and immediate result of the act, following in natural and unbroken sequence —that is, strictly speaking, the proximate result—still the actor is not to be held liable for such result if it be such as no man of ordinary care or prudence, or of ordinary sagacity and experience, could reasonably be held to have foreseen. The courts, however, have accomplished the same result by holding one liable only for the proximate consequences of his act, and considering as such proximate consequences those which should have been foreseen or anticipated. This is the doctrine of the cases expressed in various ways. As was said in Milwaukee & St. P. Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256: "It is generally held that, in order to warrant a finding that negligence not amounting to wanton wrong is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." The doctrine is thus expressed in Enochs v. Pittsburg, etc., Ry. Co., 145 Ind. 637, 44 N. E. 659. "Strictly defined, an act is the 'proximate cause' of an event when, in the natural order of things and under the particular circumstances surrounding it, such an act would necessarily produce that event, but the practical construction of 'proximate cause' by the courts is a cause from which a man of ordinary experience and sagacity could foresee that the result might probably ensue." This is the doctrine of our own courts. Railway Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; M., K. & T. Ry. Co. v. Welch, 100 Tex. 120, 94 S. W. 333; Jones v. George, 61 Tex. 352, 48 Am. Rep. 280; Seale v. Railway Co., 65 Tex. 275, 57 Am. Rep. 602; Gulf Cooperage Co. v. Abernathy, 54 Tex. Civ. App. 137, 116 S. W. 871; Rice v. Dewberry, 93 S. W. 719; Railway Co. v. Paschall, 41 Tex. Civ. App. 357, 92 S. W. 448; Railway Co. v. Latham, 53 Tex. Civ. App. 210, 115 S. W. 890. The question as presented is not merely academic. Whether the defendants should have foreseen, or whether a man of ordinary sagacity and experience would have foreseen or anticipated, from the defective condition of the car, causing the lowering of the sand board, that on account of such defect and as a result of the lowering of the sand board it would come in contact with an obstruction so placed on the track as to strike the lowered sand board, but over which it would have passed safely but for the defect, was a prominent issue in the case and the charge requested stating correctly the law upon this issue should have been given. The assign-

ment must be sustained. This applies also to the objection made by the seventeenth assignment of error to a portion of the court's charge.

[14] What we have said is sufficient to dispose of the eighteenth assignment of error, which is in substance a repetition of the fourteenth. The additional proposition that the court erred in charging on contributory negligence that such negligence in order to bar a recovery must have caused the injury, instead of charging that it must have caused or contributed to the injury, is technically correct, but will not probably occur on another trial. It would not in this case be reversible error.

The nineteenth assignment of error presents substantially the same questions presented by the fourteenth and eighteenth assignments. Some of the propositions stated under the assignment present material error, others do not. Our views are sufficiently stated in passing upon other assignments. In so far as the merits of the case are concerned, irrespective of the matters involved in the failure to offer evidence as to the receivership, etc., heretofore passed upon, the court did not err in refusing to instruct the jury to return a verdict for the defendants. We think the facts with regard to the defective condition of the car as a proximate cause of the injury, as we have defined proximate cause, presented issues which were proper to be submitted to the jury.

[15] We are inclined to think that the evidence raised the issue of contributory negligence on the part of appellee in riding upon the tool car, instead of waiting for the caboose. In no other way was this issue presented, and the court evidently considered that such issue was in the case, as will be seen by the charge in which the issue of contributory negligence was presented, but only in the most general terms. In such case appellee was entitled to have his requested charge given instructing the jury upon the concrete facts of the case. Railway Co. v. Mathis, 101 Tex. 342, 107 S. W. 530; Railway Co. v. Matthews, 100 Tex. 63, 93 S. W. 1068; Railway Co. v. McGlamory, 89 Tex. 639, 35 S. W. 1058; Railway Co. v. Hall, 98 Tex. 488, 85 S. W. 786.

There was no error in refusing to give the charge requested by appellants on the issue of assumed risk. In the view we take of the evidence, the absence of the brakeman or watchman cannot be considered as proximate causes of the injury, certainly not as the sole proximate causes, as stated in the requested charge. There is no merit in the twenty-fourth assignment of error, presenting this question. The same may be said as to the requested charge, the refusal to give which is made the basis for the twenty-fifth assignment of error.

[16] The twenty-sixth assignment of error is overruled. We do not think the evidence

raises the issue of assumed risk. The objection to the charge referred to in the twenty-sixth assignment cannot be sustained.

[17] We will not pass upon the assignment complaining of the verdict as excessive. Having concluded to reverse the judgment on other grounds, it is not necessary or proper to do so.

For the errors indicated, the judgment is reversed and the cause remanded.

Reversed and remanded.